IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RICHARD D. MYERS, Bankruptcy Trustee of M&M Marketing, L.L.C. and Premier Fighter, L.L.C., <br><br>            Plaintiff, <br><br>    vs. <br><br>MICHAEL L. BLUMENTHAL and FRANK VICARI, <br><br>            Defendants. | 8:14CV57 <br><br> ORDER |

This matter is before the court on the plaintiff Richard Myers' (Myers) motion to compel (Filing No. 6) the defendant Michael Blumenthal (Blumenthal) to answer interrogatories and requests for production of documents. Myers filed a brief (Filing No. 8) and an index of evidence (Filing No. 7) in support of the motion. Blumenthal filed a certificate of service (Filing No. 14) representing he had responded to the discovery requests. Myers filed a brief (Filing No. 15) with additional evidence attached, re-asserting the motion to compel. Blumenthal filed a brief (Filing No. 18) and an index of evidence (Filing No. 19) in opposition to Myers' motion. Myers filed a brief (Filing No. 20) in reply.

## BACKGROUND

This case arises from the financial relationship between the defendants and the bankruptcy debtors M&M Marketing, L.L.C. (M&M) and Premier Fighter, L.L.C. (Premier L.L.C.) prior to the bankruptcy proceedings. At the conclusion of certain bankruptcy proceedings, the debtors' trustee, Myers, initiated this action against the defendants in the attempt to avoid alleged preferential transfers made by the debtors to the defendants. On April 21, 2014, the court adopted the case's transfer from the United States Bankruptcy Court for the District of Nebraska based on the parties' demands to have the matter tried to a jury. **See** Filing Nos. 1 and 4. On August 5, 2014, Myers filed an amended complaint alleging the following underlying facts. **See** Filing No. 22.

Matthew Anselmo (Anselmo) formed M&M on April 20, 2006. **See** Filing No. 22 - Amended Complaint ¶¶ 9-10. M&M instigated a financial Ponzi scheme whereby Anselmo raised capital from outside investors to buy fictitious merchandise orders for large short-term gains, which were actually paid by later investors. *Id.* In this way M&M became insolvent immediately and, by June 25, 2008, had a deficit net worth in the millions of dollars. *Id.* ¶ 10. Premier L.L.C., a wholly owned subsidiary of M&M, was formed on January 18, 2008, and immediately began operating the same Ponzi scheme as M&M, causing the company to be insolvent from its inception. *Id.* ¶¶ 4, 11.

During May of 2007, at Anselmo's urging, Blumenthal transferred $1,585,000 in loans to M&M, which loans became delinquent the following month. *Id.* ¶ 12. Blumenthal initiated a lawsuit against Anselmo and M&M, in Illinois, alleging fraud. *Id.* ¶ 14. While the lawsuit contained four counts, on January 31, 2008, the court issued an order in favor of Blumenthal against both Anselmo and M&M on only one count, for $2,200,000, but the order did not create a final judgment. *Id.* ¶ 15. On or about March 28, 2008, while insolvent, M&M wire transferred $165,000 to Blumenthal. *Id.* ¶ 17.

On June 27, 2008, in a telephone conversation between Blumenthal, David Piell (Peill), Anselmo, and others, Blumenthal "demanded" Anselmo complete a Disclaimer of Interest (Disclaimer) turning over control of the debtors to Blumenthal. *Id.* ¶ 18. The Disclaimer transferred control over all assets of the debtors, tangible and intangible, to Blumenthal. *Id.* ¶ 19. The debtors' assets at the time of the transfer included: inventory valued at not less than $1,000,000, the lease interest in Omaha commercial property, an Econoline truck, an Econoline van, equipment, receivables from Premier L.L.C., Premier L.L.C. posters and banners, M&M inventory from Omaha, and office furniture and supplies. *Id.* ¶ 20. The debtors were insolvent at the time of the transfer and received no consideration for the transfer. *Id.* ¶ 19-20. Additionally, the debtors had outstanding unsecured debts with creditors, other than Blumenthal, at the time of the transfer. *Id.* ¶ 20.

Shortly after executing the Disclaimer, Blumenthal created Premier Fighter, Inc. (Premier Inc.), which took control of the debtors' assets for the purpose of selling the assets while keeping the proceeds of the sales separate from Blumenthal's other finances. *Id.* ¶ 21. Blumenthal was the President of Premier Inc. from its inception. *Id.*

2

However, Blumenthal argues he was the "President" in name only while Piell was responsible for operations.  See Filing No. 19 - Blumenthal Decl. ¶ 3.  Premier Inc. received all proceeds from the debtors until they ceased to operate in January 2009.  *Id.* ¶ 22.  Blumenthal collected on accounts, throughout 2008 and 2009, owed to the debtors.  *Id.* ¶ 23.  All transfers occurred while Blumenthal knew the debtors were insolvent, were made without consideration, and with awareness M&M had defrauded Blumenthal.  *Id.* ¶ 23-4.

Based on the above factual allegations, Myers brought this action as part of the Chapter 7 proceedings in the United States Bankruptcy Court for the District of Nebraska to assert claims "for avoidance of transfers that [the debtors] made to Blumenthal on strong arm, preference, and fraudulent conveyance theories, pursuant to:  11 U.S.C. § 544(a)(1) and (2), 544(b) (1), 547(b), § 548(a)(1)(A) and (B), 550(a), and 551; and Neb. Rev. Stat. §§ 36-705 and 36-706."  See Filing No. 8 - Brief p. 3; see also Filing No. 22 - Amended Complaint.  Additionally, Myers "also pled claims for an equitable accounting in Counts XIII and XIV."  See Filing No. 8 - Brief p. 8; see also Filing No. 22 - Amended Complaint.  After the case was transferred from the bankruptcy court for trial by jury, Myers sought discovery from Blumenthal.

On February 28, 2014, Myers served interrogatories and requests for production of documents upon Blumenthal.  See Filing No. 7 - Betterman Decl. ¶¶ 2, 3, and 9; Ex. A - Interrogatories; Ex. B - Second Set of Requests for Production.  The discovery seeks disclosure from Blumenthal of the amount realized in liquid assets, from the collection of accounts and contract rights, and the sale of physical assets, inventory and equipment transferred from the debtors to Blumenthal.  See Filing No. 7 - Ex. A - Interrogatories 11-13, 16 and Ex. B - Requests 1-8, 15, 16; Filing No. 6 - Motion ¶ 4; Filing No. 8 - Brief p. 3.  Moreover, Myers requests all documents relating to the fraudulent transfer in possession of Blumenthal, Piell, and Premier Inc.  See Filing No. 6 - Motion ¶ 5; Filing No. 8 - Brief p. 3, 7-8.  Interrogatory No. 14 requires justification for each objected to request for admission and Interrogatory No. 15 requests the names of individuals Blumenthal spoke with at the FBI concerning reports against Anselmo.  See Filing No. 7 - Ex. A - Interrogatories.  Finally, Request for Production of Documents Nos. 9-14 concern Premier Inc.'s business conduct unrelated to the debtors.

3

Initially, Blumenthal did not respond to the discovery. **See** Filing No. 7 - Betterman Decl. ¶ 10. By correspondence and personal contact in April 2014, Blumenthal stated he could not respond to the discovery. *Id.* ¶¶ 11-12. On May 3, 2014, Myers filed the instant motion to compel. **See** Filing No. 6. The court required the parties to confer and file a planning report, which they did, by May 15, 2014. **See** Filing Nos. 5 and 9. At that time, the court entered an initial progression order authorizing the parties to commence discovery. **See** Filing No. 10.

On June 10, 2014, the court entered an order requiring Blumenthal to respond to the motion to compel discovery no later than June 25, 2014. **See** Filing No. 11 - Order. On June 25, 2014, Blumenthal filed a certificate of service showing he had, on that date, served responses to the discovery requests at issue in Myers' motion. **See** Filing No. 14. On July 1, 2014, Myers re-asserted his motion to compel, contending Blumenthal's discovery responses were "non-responsive" by failing to provide "answers to the interrogatories propounded and . . . produce the documents requested." **See** Filing No. 15 - Brief p. 2.

Myers argues the discovery sought is "absolutely necessary . . . to obtain a proper accounting of all cash, receivables, contract rights, inventory, and equipment [the debtors] fraudulently transferred to Blumenthal." **See** Filing No. 6 - Motion ¶ 4. Without the requested discovery, Myers asserts his case will be "seriously prejudiced" because without the documents, which are only obtainable through Blumenthal, Myers is unable to complete the accounting of the amounts Blumenthal realized. *Id.* ¶ 6; **see** Filing No. 8 - Brief p. 3-4. Myers contends Blumenthal has access to Premier Inc.'s accounting records and documents evidenced by Blumenthal's production of a Quicken file from Premier Inc. associated with the discovery responses. **See** Filing No. 8 - Brief p. 9 (**citing** Filing No. 7 - Ex. C - Request for Admission Responses Nos. 98, 100, 101, and 102, & p. 43-53 (Quicken files)). Additionally, Blumenthal admitted in a deposition he could obtain the cash receipts from the sales of inventory by the debtors but he would need Piell's assistance. *Id.* ¶ 12. Myers' attorney stated he attempted to subpoena discovery from Piell, but a process server was unable to complete service. **See** Filing No. 15 - Ex. 2 Betterman Decl. ¶ 2. Myers argues Blumenthal has not met his burden to provide a reasonable explanation for each objection to the discovery. **See** Filing No. 15

4

- Brief p. 2.  In any event, Myers argues Blumenthal waived any objections he might have to the discovery by failing to timely respond.  *Id.* at 2, 11.  Finally, Myers requests attorney's fees pursuant to Rule 37.  *Id.* ¶ 8.

Blumenthal, a practicing attorney representing himself in this matter, did not raise any objections to the discovery sought by Myers.  Instead, Blumenthal provides answers or asserts he has no access or control over any responsive information or documents, to the extent any exists.  **See** Filing No. 15 - Ex. 1; **see also** Filing No. 7 - Ex. C - Request for Admission Response No. 83.  Moreover, Blumenthal contends Myers is making another attempt to obtain discovery he was unable to obtain during the bankruptcy proceeding.  **See** Filing No. 18 - Response ¶ 8.  He argues he provided responses in the previous litigation, where the court denied a similar motion to compel.  *Id.* ¶ 8.  Blumenthal's brief primarily addresses Interrogatory No. 11 but clarifies the response to other discovery would be the same or similar.  **See** *id.* ¶ 10.

> Interrogatory No. 11:  Please identify in detail by amount, date and source, all cash receipts that either you or Premier Fighter, Inc. obtained from the sale of any tangible or intangible personal property that you acquired from M&M and Premier, or either of them, at any time during the period from and after June 1, 2008 to February 27, 2014.
>
> Answer:  Other than the electronic file previously produced I do not have access to the information requested.  As I have stated many times before, this work was not conducted by me personally.  It was done for Premier Fighter, Inc., an entity not served with discovery, by David Piell, a person no longer under my power, direction or control.

**See** Filing No. 15 - Ex. 1 - Answers to Trustees Third Set of Interrogatories p. 1.

Blumenthal states the only record of Premier Inc. he had access to was the Quicken file he already turned over and no new transactions have occurred since the Quicken file was produced.  **See** Filing No. 19 - Blumenthal Decl. ¶¶ 2-4; Filing No. 18 - Response ¶ 3.  Furthermore, Blumenthal asserts the transactions occurred mostly online without a paper trail, the sales are estimated to amount to less than $5,000, calculating the value of liquid assets from the selling of merchandise would have to done by recreating the data from online sources, and only Piell has the knowledge and access necessary to calculate the sales.  **See** Filing No. 19 - Blumenthal Decl. ¶¶ 4-7; Filing No. 18 - Response ¶ 4.  Blumenthal contends it would cost more to recreate the

information sought than the information is worth. **See** Filing No. 19 - Blumenthal Decl. ¶ 4. Blumenthal states Piell was not acting as an attorney for Blumenthal when he was managing Premier Inc. **See** Filing No. 19 - Blumenthal Decl. ¶ 4. Blumenthal further states Piell is no longer an employee of Premier Inc. and Blumenthal still owes Piell "substantial money" for his work for Premier Inc., but he does not have the money to pay him for the arears or for work gathering discovery at this time. *Id.* Blumenthal argues Myers' estimates of the amount of money obtained from the debtors is inflated because Anselmo kept inaccurate records and most of Premier Inc.'s profits came from merchandise purchased by Blumenthal. **See** Filing No. 19 - Blumenthal Decl. ¶ 8; Filing No. 18 - Response ¶ 6. In fact, Blumenthal asserts, he abandoned most of the debtor's merchandise and supplies as worthless. **See** Filing No. 18 - Response ¶ 5.

Myers contends Blumenthal must be compelled to account for what he did with the property, even if he must incur some expenses to do so. **See** Filing No. 20 - Reply p. 2. Myers asks this court to require Blumenthal to obtain the information from his "lawyer" and "liquidating agent." *Id.* at 2-3. Myers disputes Blumenthal's assertion Piell was not Blumenthal's or Premier Inc.'s lawyer with evidence in the Quicken file "legal fees" rather than "wages" were paid to Piell. *Id.* at 5-6 (**citing** Filing No. 7 - Ex. C - Request for Admission Responses p. 44, 50 (Quicken files) and Filing No. 8 - Brief p. 7 n.2). Further, Myers contradicts Blumenthal's assertion the amounts were "minimal" or less than $5,000. Specifically, Myers provides some evidence the proceeds from the sale of the debtors' inventory was more than $24,000. **See** Filing No. 20 - Reply p. 5 (**citing** Filing No. 7 - Ex. C - Request for Admission Responses p. 44 (Quicken files)).

## ANALYSIS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Broad discovery is an important tool for the litigant, and so '[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" ***WWP, Inc. v. Wounded Warriors Family Support, Inc.***, 628 F.3d 1032, 1039 (8th Cir. 2011) (alteration in original) (**quoting** Fed. R. Civ. P. 26(b)(1)). Accordingly, relevant information includes "any matter that bears on, or that

reasonably could lead to other matter that could bear on, any issue that is or may be in the case." ***Oppenheimer Fund, Inc. v. Sanders***, 437 U.S. 340, 351 (1978). "However, the proponent of discovery must make '[s]ome threshold showing of relevance . . . before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.'" ***Prism Tech., LLC v. Adobe Sys., Inc.***, 284 F.R.D. 448, 449 (D. Neb. 2012) (alterations in original) (**quoting** ***Hofer v. Mack Trucks, Inc.***, 981 F.2d 377, 380 (8th Cir. 1992)).

Generally, the court has authority to limit the scope of discovery. ***Roberts v. Shawnee Mission Ford, Inc.***, 352 F.3d 358, 361 (8th Cir. 2003). The Federal Rules authorize the court to limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Moreover, the court may also limit discovery after considering "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

Once the requesting party meets the threshold relevance burden, generally "[a]ll discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." ***Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton***, 136 F.R.D. 682, 684-85 (D. Kan. 1991) (citation omitted). The party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper. ***St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.***, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) (objecting party has the burden to substantiate its objections). The party resisting discovery has the burden to show facts justifying its objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome. **See** ***Wagner v. Dryvit Sys., Inc.***, 208 F.R.D. 606, 610 (D. Neb. 2001). This imposes an obligation to provide

sufficient detail and explanation about the nature of the burden in terms of time, money, and procedure required to produce the requested discovery. *Id.*

A party may request another party to produce documents for inspection and copying. Fed. R. Civ. P. 34(a). The rule applies to such documents "in the responding party's possession, custody, or control." *Id.* "[C]ontrol is defined as the legal right, authority, or ability to obtain upon demand documents in the possession of another." ***In re Hallmark Capital Corp.***, 534 F. Supp. 2d 981, 982 (D. Minn. 2008) (internal citation omitted). A party does not need to have legal ownership or actual possession of documents, "rather documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action." *Id.*

There is no dispute about the relevance of the requested discovery. Additionally, the defendant does not object to discovery. The dispute lies in Blumenthal's practical ability to obtain the discovery sought. Generally, "[p]ossession by an attorney or a third party of the document or matter required to be produced cannot be used as a means of avoiding compliance with a direction for its production." ***Bifferato v. States Marine Corp. of Del.***, 11 F.R.D. 44, 46 (S.D.N.Y. 1951); ***Romano v. SLS Residential Inc.***, 298 F.R.D. 103, 111 (S.D.N.Y. 2014) ("Since those documents are in the custody of defendants' attorney, they are within the control of the client, and hence can be reached by a court order under Rule 37(a)."). However, even in ***Bifferato***, the court noted, "[t]he true test is control and not possession." ***Bifferato***, 11 F.R.D. at 46. Similarly, the cases cited by Myers stand for the proposition,

> Control includes documents that a party has the legal right to ***obtain on demand***. Because a client has the right, and ***the ready ability, to obtain*** copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control.

***American Soc'y For Prevention of Cruelty To Animals v. Ringling Brothers & Barnum & Bailey Circus***, 233 F.R.D. 209, 212 (D. D.C. 2006) (emphasis added); **see also** *Romano*, 298 F.R.D. at 111 (**citing** ***Shcherbakovskiy v. Da Capo Al Fine, Ltd.***, 490 F.3d 130, 138 (2d Cir. 2007) (noting the question is whether litigant has "access and the practical ability to possess documents")); ***New York ex rel. Boardman v. Nat'l***

***R.R. Passenger Corp.***, 233 F.R.D. 259, 267 (N.D.N.Y. 2006) ("A party may be required to produce documents even if it only controls the persons who are able to obtain the documents.").

> A party need not produce documents or tangible things that are not in existence or within its control. It is sufficient that the discovered party respond by saying that a document or tangible thing is not in existence. In the face of a denial by a party that it has possession, custody or control of documents, the [requesting] party must make an adequate showing to overcome this assertion.

***Hagemeyer N. Am., Inc. v. Gateway Data Sciences Corp.***, 222 F.R.D. 594, 598 (E.D. Wis. 2004) (internal quotations and citations omitted); see ***Kickapoo Tribe of Indians of Kickapoo Reservation in Kansas v. Nemaha Brown Watershed Joint Dist. No. 7***, 294 F.R.D. 610, 613-14 (D. Kan. 2013) ("The party seeking the production of documents bears the burden of proving that the opposing party has the control required under Rule 34.").

"The relevant question here is not whether the [defendant] has a duty . . . to retrieve responsive documents that may be in the possession of former . . . employees. Rather, the relevant question is whether the [defendant] has 'possession, custody, or control' of the documents requested . . . ." ***Kickapoo Tribe***, 294 F.R.D. at 613. Here, the court finds Myers has not met his burden of proving Blumenthal has the necessary control of the information requested. Myers has not shown Blumenthal has the legal right to obtain the documents on demand or, since the documents do not exist, to compel Piell to locate or create the information sought. The court's analysis does not change whether Piell acted as Blumenthal's or Premier Inc.'s attorney or merely an employee. The undisputed evidence shows Blumenthal does not have access to Premier Inc.'s online records without Piell's assistance, however Blumenthal does not have authority to compel such assistance. In any event, absent an accurate accounting of the sales, Blumenthal may be the party ultimately disadvantaged at trial. Otherwise, Blumenthal has provided adequate responses to the discovery requests without objection to the extent the information or documents sought exist and are within Blumenthal's control. Accordingly, the court finds the plaintiff's motion should be denied.

Although based on the defendant's conduct, the plaintiff filed a motion to compel, the court finds the defendant's initial delay and later responses to discovery were substantially justified. Similarly, the plaintiff's attempts to obtain additional discovery was substantially justified. Under the circumstances, the court does not find the imposition of sanctions to be warranted in this case and will not assess sanctions pursuant to Fed. R. Civ. P. 37 against either party with regard to the instant discovery dispute. Upon consideration,

**IT IS ORDERED**:

Richard Myers' motion to compel (Filing No. 6) is denied.

Dated this 28th day of August, 2014.

                                            BY THE COURT:

                                            s/ Thomas D. Thalken
                                            United States Magistrate Judge