IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RICHARD D. MYERS, Bankruptcy Trustee of M&M Marketing, L.L.C. and Premier Fighter, L.L.C.;<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL L. BLUMENTHAL, FRANK VICARI, an Individual;<br><br>Defendants. | 8:14CV57<br>09-81458 BK<br>11-8033 ADV<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on a "Motion to Determine Default Judgment Was Non-Final Order, to Clarify Ruling on Trustee's Renewed Motion for Partial Summary Judgment, and Determine Collateral Estoppel Effect of Ruling in the *Cronk* Case; Request for Judicial Notice" filed by Richard D. Myers, (hereinafter, Myers or "the Trustee"), the bankruptcy trustee of M&M Marketing, L.L.C. and Premier Fighter, L.L.C. (hereinafter, "M & M," "Premier," or "debtors"), Filing No. 30, and on the parties' joint motion, in accordance with the progression order, to review certain orders of the United States Bankruptcy court, Filing No. 29.[1] This is an adversary proceeding for avoidance of certain allegedly preferential transfers from the debtors to defendant that is part of a Chapter 7 proceeding in the United States Bankruptcy Court for the District of Nebraska.

I.   BACKGROUND

---

[1] The parties were ordered to "file a joint motion to review any of the bankruptcy judge's rulings together with an index of related documents." Filing No. 26.

The proceeding was transferred from the bankruptcy court for trial by jury under *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2168 (2014). In that case, the Supreme Court assumed, without deciding, that a state law fraudulent conveyance claim is a "Stern Claim"—that is a proceeding that is defined as "core" under 28 U.S.C. §157(b), but that may not, as a constitutional matter, be adjudicated to final judgment by a bankruptcy court. *Id.* at 2174; *see Stern v. Marshall*, 564 U.S. ——, ——, 131 S. Ct. 2594, 2609 (2011) (stating Congress may not withdraw from Article III courts "any matter which, from its nature, is the subject of a suit at the common law, or in equity, or in admiralty."). When the Constitution does not permit a bankruptcy court to enter final judgment on a bankruptcy-related claim, the relevant statute nevertheless permits a bankruptcy court to issue proposed findings of fact and conclusions of law to be reviewed de novo by the district court. *Executive Benefits Ins. Agency,* 134 S. Ct. at 2174; *see Wellness Int'l Network, Ltd. v. Sharif*, No. 13-935, — S. Ct. at ——, ——, 2015 WL 2456619, *3 (May 26, 2015) (holding bankruptcy court has authority to issue final orders on most matters with the parties' knowing and voluntary consent). [2]

Because Blumenthal asserted his right to a jury trial and to resolution by an Article III judge, the bankruptcy court recommended that the court withdraw the reference of the adversary proceeding to the bankruptcy court. Filing No. 1, Findings and Recommendations ("F&R") at 3-4. The bankruptcy court further recommended that the court deny the Trustee's renewed motion for summary judgment. *Id.* The Trustee

---

[2] Given the posture of the case and the protracted nature of this litigation, the court will not consider whether Blumenthal impliedly consented to the Bankruptcy Court's jurisdiction. *See Wellness Int'l Network, Ltd*, 2015 WL 2456619 at *12 (stating that consent need not be express).

2

objected to the bankruptcy court's F&R, but this court overruled the objection and adopted the F&R. See Filing No. 4, Memorandum and Order at 5-6; *Myers v. Blumenthal,* No. 14CV57, 2014 WL 1584220, *3 (D. Neb. April 21, 2014).

The relevant facts are set forth in earlier orders and need not be repeated here. *See Myers v. Blumenthal*, No. 8:14CV57, 2014 WL 4264788, at *1 (D. Neb. Aug. 28, 2014)(order on motion to compel); *In re M & M Mktg., L.L.C.*, No. A11-8033, 2013 WL 5592909, at *1 (Bankr. D. Neb. Oct. 10, 2013) (order on motion to clarify); *In re M & M Mktg., L.L.C.*, No. A11-8033, 2013 WL 3071005, at *1 (Bankr. D. Neb. June 18, 2013) (order on motions for summary judgment). Briefly, the debtors, M & M and Premier, were entities involved in promoting mixed martial arts and other events, and selling merchandise related to those events. *In re M & M Marketing*, 2013 WL 3071005 at *1. Both entities were owned by Matthew Anselmo. *Id.* Michael Blumenthal loaned money to the companies. *Id.* Matthew Anselmo was later prosecuted for mail and wire fraud, money laundering, uttering a counterfeit security, and aiding and abetting those crimes. *See United States v. Anselmo*, No. 8:09-cr-177 (D. Neb. April 1, 2010), *aff'd*, No. 10-1805 (8th Cir. Aug. 10, 2010).  This action involves the financial relationship between the debtors and Blumenthal.

The Trustee generally seeks a *de novo* reconsideration of certain Bankruptcy Court rulings in order to eliminate any doubt with respect to jurisdictional and/or Constitutional issues.  The Trustee asks the court to treat the Bankruptcy Court's earlier orders as Findings and Recommendations and then to adopt or reject those Findings and Recommendations on *de novo* review.  He asks that the court make certain rulings as a matter of law, to wit:  to find that the order of the United States District Court for the

3

Northern District of Illinois purportedly granting defendant Blumenthal a default judgment against M&M was a non-final interlocutory order on which Blumenthal had no right to execute;[3] to determine that Matthew Anselmo's guilty plea to, and conviction of, a charge of mail fraud in violation of 18 U.S.C. § § 1341 and 2, in *United States v. Anselmo*, No. 8:09-cr-177 (D. Neb. April 1, 2010), *aff'd*, No. 10-1805 (8th Cir. Aug. 10, 2010), conclusively establishes: (1) that the debtors operated a Ponzi scheme from 2006 to 2008; (2) that transfers from Premier in the amount of $330,460.24 and from M&M in the amount of $171,341.73 to Michael Blumenthal were made in furtherance of that Ponzi scheme; (3) that M&M and Premier were insolvent at the time of the transfers; (4) that the transfers were made in furtherance of the Ponzi scheme with fraudulent intent; (5) that the Ponzi presumption is recognized in the Eighth Circuit and applies to this case; and (6) that the bankruptcy court's determination that the debtors were insolvent in the *Cronk* case[4] is binding on defendant Blumenthal in the instant case under the doctrine of collateral estoppel. Essentially, the Trustee contends that rulings as a matter of law on these matters will narrow the issues for trial.

In their joint motion, the parties ask the court to review the following orders of the Bankruptcy Court and supporting documentation:

---

[3] *See Michael L. Blumenthal v. Matthew H. Anselmo, M&M Marketing, L.L.C., and Kathryn Hemenway*, No. 1:07-cv-07230, Filing No. 19, Judgment (N.D. Ill. Jan 31, 2008); Filing No. 125, Order denying motion to amend judgment (N.D. Ill. May 29, 2008); Filing No. 128, Order granting motion for reconsideration (N.D. Ill. June 16, 2009); *See Michael L. Blumenthal v. Matthew H. Anselmo, M&M Marketing, L.L.C., and Kathryn Hemenway,* No. 8:08-cv-00258, Filing No. 1, registration of Judgment (D. Neb. March 10, 2008).

[4] *See Michael Blumenthal and Richard D. Myers, Trustee for the Bankruptcy Estates of M&M and Premier Fighter v. Jerry Cronk, Cheryl Cronk, Ronald Cronk, Colleen Langdon, Jerome Langdon, Phillip Cronk, Lorraine Cronk, and Heather Anselmo,* No. 11-AP-08096, 2014 WL 32137 (Bankr. D. Neb. 2014) (hereinafter, "the Cronk proceeding").

1. *In re M&M*, No. 09-81458 BK, *Myers v. Blumenthal*, Adversary Case No.11-0833, Filing No. 30, Order denying defendant Blumenthal's motions to dismiss and for sanctions (Bankr. D. Neb. October 14, 2011).[5]

2. *Id.*, Filing Nos. 244 & 246, Orders denying cross-motions for summary judgment (Bankr. D. Neb. June 18, 2013).[6]

3. *Id.,* Filing Nos. 264 & 265, Orders granting Chapter 7 Trustee's motion to clarify the court's ruling on the trustee's motion for summary judgment (Filing No. 249) (Bankr. D. Neb. October 10, 2013) and 276, Order denying motion to reconsider (Bankr. D. Neb. Dec. 4, 2014).[7]

II. FACTS

A. The Present Action

In bankruptcy court, the Trustee filed a complaint for recovery of money as a preference or fraudulent transfer against Blumenthal. *Id.*, Filing No. 1, Complaint. Blumenthal moved to dismiss the Trustee's complaint and for sanctions, based on the assertion that he was not an insider at the time of the alleged preferential transfers. *See id.*, Filing No. 16, Motion; Filing No. 28, Ex. A, Disclaimer. He submitted evidence—a document entitled "Disclaimer of Interest," that allegedly shows he was not an insider at the time of the transfers and argued that any allegations of preferential or

---

[5] Documents connected to the motion are *In re M&M*, No. 09-81458 BK, *Myers v. Blumenthal*, Adversary Case No.11-0833, Filing Nos. 15, 16, 17, 19, 23, 24, 25, 26, 27, and 29.

[6] Documents connected to the motions are *In re M&M,* No. 09-81458 BK, *Myers v. Blumenthal*, Adversary Case No.11-0833, Filing Nos. 35, 36, 39 to 55, 122-124, 128 to 131, 138 to 200, 202, 203, 210, 211, 213, 214, 217, 218, 220 to 228, 237 to 239, 242, 243.

[7] Documents connected to the motions are *In re M&M*, No. 09-81458 BK, *Myers v. Blumenthal*, Adversary Case No.11-0833, Filing Nos. 249, 250, 255, 257, 260, 261, 263, 267, 272, and 274.

fraudulent transfer were barred by the statute of limitations as it pertains to non-insiders.

*See id.,* Filing No. 28.  After a hearing, the Bankruptcy Court found that

> A plausible argument may be made that a person who has had transferred to him all of the assets of the two limited liability companies could be considered an insider because a person in possession or ownership of all of the assets of a business would appear to be in control of the business.
>
> However, the determination of whether an individual is an insider is a question of fact. Unless it is clear from the pleadings that the plaintiff is unable to prove the essential element of the complaint, that is, that the defendant is an insider, the court must take the allegations of the complaint as accurate.

*Id.*, Filing No. 30, Order at 2.  In light of that finding, the Bankruptcy Court also denied Blumenthal's motion for sanctions.  *Id.* at 3.

Blumenthal and the Trustee both moved for summary judgment on the issue of the allegedly preferential or fraudulent transfers.  *Id.*, Filing Nos. 126 and 123.  The Bankruptcy Court found the evidence established that

> In May 2007, Michael Blumenthal loaned $1,545,000 to M & M Marketing and Premier Fighter. When the loans were not repaid, Mr. Blumenthal filed a lawsuit in Illinois and obtained a default judgment against Mr. Anselmo and M & M Marketing for $2.2 million on one count of the complaint on January 31, 2008, from the federal court in the Northern District of Illinois. Mr. Blumenthal took steps to collect the debt, which included obtaining garnishment orders and Mr. Anselmo's transfer of the assets of M & M Marketing and Premier Fighter.
>
> In the context of the collection efforts, a question arose as to whether the default judgment was a final judgment. The Illinois court entered an order in late May 2009 holding that the default judgment was not final because it did not dispose of all of the claims in the complaint, nor did it contain "an express determination that there is no just reason for delay" in entering a final judgment on fewer than all claims, as required by Federal Rule of Civil Procedure 54(b). Other creditors filed involuntary Chapter 7 petitions against M & M Marketing and Premier Fighter in early June 2009. After the petition date, the Illinois court reconsidered its order at Mr. Blumenthal's request and reversed itself, making a specific finding that the default judgment on Count I of the complaint was final as of January 31, 2008.

6

*Id.,* Filing No. 244, Order at 1-2.

The Bankruptcy Court found that Mr. Blumenthal did not have a final order or judgment to rely on before taking steps to collect a debt,[8] and found there were genuine issues of material fact on the issues of: 1) whether Blumenthal was an insider of the debtors, so as to extend the recapture period to one year before the petition date; 2) whether the corporate veil was pierced with respect to Premier's assets; and 3) whether the transfers were fraudulent under the Nebraska Uniform Fraudulent Transfer Act (NUFTA).[9] *Id.* at 4-6. The Court found issues of fact with respect to Blumenthal's intent to defraud and declined to afford the trustee a presumption of intent to defraud based on the alleged existence of a Ponzi scheme. *Id.* at 6. Further, the Bankruptcy Court denied the trustee's motion for fees and costs for Mr. Blumenthal's alleged willful violation of the automatic stay, finding there were factual issues as to the creditor's intent and knowledge. *Id.* at 7.

On the motion of the trustee, the Bankruptcy Court later clarified its ruling, stating that the facts were sufficient to find that Matthew Anselmo conducted a Ponzi scheme and the transfers to Blumenthal were made in furtherance of the scheme, so as to

---

[8] The Bankruptcy Court found the Illinois court's post-petition order was *void ab initio,* and thus the "order in effect as of the petition date was the May 29, 2009, order wherein the court confirmed that the January 31, [2008 default judgment] order was not final because it did not dispose of all the claims in the complaint and did not expressly state that it was final." *Id.*, Filing No. 244, Order at 3. Further, the Bankruptcy Court found the May 31, 2009, order "clearly could not be considered a final order." *Id.*

[9] In making that finding, the court declined to admit the declaration of Matthew Anselmo, Filing No. 210, finding it contained legal conclusions and "would lend little to the findings the court must make." *Id.,* Filing No. 244, Order at 2. The court agrees with that determination.

7

invoke the Ponzi presumption to the extent it is recognized in the Eighth Circuit.[10]  Filing No. 264, Order at 4.   The Bankruptcy Court nevertheless found that "the Ponzi scheme presumption was subject to rebuttal through appropriate evidence from the defendant." *Id.* at 4; *In re M & M Mktg., L.L.C.*, No. A11-8033, 2013 WL 5592909, at *3 (Bankr. D. Neb. Oct. 10, 2013).  Blumenthal moved for reconsideration of the clarification order, contesting the Bankruptcy Court's conclusion that the transfers from the debtor were in furtherance of the Ponzi scheme.  *Id.*, Filing No. 267, Motion at 4.  In support of the motion, Blumenthal submitted, inter alia, his declaration and deposition testimony and the deposition testimony of Michael Anselmo and Frank Vicari. *See id.,* Filing Nos. 198, 222, 122, 123, and 124.   The Bankruptcy Court denied Blumenthal's motion to reconsider in a text order.  *Id.*, Filing No. 276. *In re M&M*, No. 09-81458 BK, Filing No. 276.

The trustee then renewed his motion for summary judgment, asking for basically the same relief on the same set of facts as the initial motion for summary judgment.  *Id.*, Filing No. 287, Motion.  The bankruptcy judge then issued his recommendation that this court withdraw the reference and also recommended that the court deny the motion for

---

[10] In making that finding, the Bankruptcy Court stated:

> Here, the facts are sufficient to find that Mr. Anselmo conducted a Ponzi scheme, despite his stated belief that, given more time, Premier Fighter could have earned enough money through its legitimate business to repay all the fraudulent loans and investments. The government's evidence for the criminal charges against him supports it, Mr. Anselmo admits it, and Mr. Blumenthal took that position when he requested punitive damages in the state court lawsuit he filed against Mr. Anselmo. The second element has also been established, as the transfers to Mr. Blumenthal enabled the debtors to continue operating and permitted Mr. Anselmo to continue taking money from other creditors on the basis of false representations.

*Id.,* Filing No. 264, Order at 4.

8

summary judgment for the same reasons stated in the earlier order. *Id.*, Filing No. 325, F&R; *Myers v. Blumenthal*, No. 14CV57, Filing No. 1, F&R.

In this court, in a Memorandum and Order dated April 21, 2014, this court overruled the trustee's objections to the F&R of the magistrate judge. Filing No. 4, Memorandum and Order at 6. The court reviewed the bankruptcy's factual findings for clear error and its conclusions of law de novo. *Id.* at 3. This court found the bankruptcy judge correct in all respects and adopted his findings and recommendation. *Id.* at 6. This court found

> [t]he factual issues in this case are numerous and plenty, and they are clearly disputed. Further, the court finds the bankruptcy judge applied the appropriate legal standards in his analysis regarding the summary judgment standards as well as the substantive law concerning fraudulent transfers and preferences. The court has carefully reviewed the law cited by the bankruptcy judge, and finds these are correct assessments of the law as applied in this case.

*Id.* at 5.

    B.  The *Cronk* Action

Blumenthal had also sued Jerry Cronk, Cheryl Cronk, Phillip Cronk, Lorraine Cronk, Ronald Cronk, Heather Anselmo, and Ryan Cronk in this court for "assumpsit," "constructive trust," and "fraudulent transfer." *See Michael Blumenthal v. Jerry Cronk, et al.,* No. 8:11-cv-25, Filing No. 3, Amended Complaint (March 6, 2011). That action also involved transfers from M&M. *Id.* M&M was joined as a necessary party and the case was referred to Bankruptcy Court on the filing of a suggestion in bankruptcy. *Id.*, Filing No. 44, Memorandum and Order at 4-5. In Bankruptcy Court, the trustee moved to intervene as a party plaintiff and that motion was granted. *See Michael Blumenthal, Plaintiff and Richard D. Myers, Intervenor v. Jerry Cronk, Cheryl Cronk, Ronald Cronk,*

*Colleen Langdon, Jerome Langdon, Phillip Cronk, Lorraine Cronk, and Heather Anselmo*, No. 11-08096, Filing Nos. 7, Motion to Intervene, and 8, Order.  The trustee filed a complaint alleging that the transfers from the debtors to the named defendants should be avoided as a fraudulent transfers.  *Id.*, Filing No. 10, Intervenor's Complaint. The defendants moved for summary judgment and that motion was granted in part and denied in part.  *See id.*, Filing Nos. 40, Motion for Summary Judgment, and 65, Order. Noting that both sides conceded that Matthew Anselmo used the debtors to operate a Ponzi scheme, the Court found the elements of insolvency and actual intent to defraud were "deemed established by the nature of the transaction, [and] the only issues to be determined are whether the defendants provided reasonably equivalent value for the transfers and whether they acted in good faith." *Id.*, Filing No. at 64, Order at 12.  The Bankruptcy Court denied the defendants' motion for summary judgment on their defenses under the Uniform Fraudulent Conveyances Act, finding "the issue of good faith is a question of fact." *Id.* at 14.  Later, on a motion to alter or amend the summary judgment order, the Bankruptcy Court found "the plaintiff is not entitled to a presumption of intent to defraud based on the existence of a Ponzi scheme. That will be an issue for trial." *Id.*, Filing No. 79, Order at 2.

After a trial, the Bankruptcy Court found that the debtors were insolvent, the defendants were "insiders," and the debtors, as operated by Matthew Anselmo, were involved in a Ponzi scheme.  *Id.,* Filing No. 306, Order at 4.  Further, the court found the payments were made to defendants by the debtors with Matthew Anselmo's intent to hinder, delay or defraud other creditors, including the State of Nebraska Department of Revenue, Mr. Blumenthal and Dr. Frank Vacari, two individuals who loaned the debtor

10

more than a million dollars in May of 2007. *Id.* However, the Bankruptcy Court found that the Cronk parties did not know nor have reason to know of the insolvency of the debtors at the time of the transfers and also found that that the debtors received reasonably equivalent value for the transfers because such payments completely or partially satisfied contractual loan obligations of the debtors as to the defendants as creditors. *Id.* The Bankruptcy Court applied the "netting rule" to compare the amounts transferred to the defendant investors against the amounts invested by those individuals, and found the net was negative. *Id.* at 8. Accordingly, the Bankruptcy Court went on to determine that the defendant investors acted in good faith and gave reasonably equivalent value for the transfers. *Id.* at 11. The Bankruptcy Court concluded that the transfers received by the Cronk defendants were not avoidable as fraudulent either under an actual fraud or constructive fraud theory. *Id.*

    III.    LAW

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.)*, 371 F.3d 397, 401 (8th Cir. 2004).

To withstand a motion for summary judgment, the non-moving party "has an affirmative burden to designate specific facts creating a triable controversy." *Crossley v. Georgia–Pac. Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004) (internal citations omitted).

Failure to oppose a basis for summary judgment constitutes a waiver of that argument. *Satcher v. University of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 734–35 (8th Cir. 2009). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The Bankruptcy Code provides that a trustee may avoid, as fraudulent, transfers of property that occur within certain time frames and when specific circumstances are met. See 11 U.S.C. § 548(a)(1) (2014). The trustee has with authority to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim[.]" 11 U.S.C. § 544(b)(1). "Applicable law" in this instance is the Nebraska Uniform Fraudulent Transfer Act ("NUFTA"), specifically Neb. Rev. Stat. §§ 36–705(a) and 36–706. NUFTA encompasses alternative prongs of liability—either proof of actual intent to hinder, delay, or defraud creditors, or proof of a transfer for less than reasonably equivalent value made while the debtor was insolvent or which caused the debtor to become insolvent. Neb. Rev. Stat. § 36–705(a).

"'Under 11 U.S.C. § 548(a), the Trustee is given authority to avoid transfers . . . on the ground of actual fraud or on the ground of constructive fraud.'" *Ritchie Capital Mgmt., LLC v. Stoebner*, 779 F.3d 857, 861 (8th Cir. 2015) (quoting *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir.1983)); see 11 U.S.C. § 548(a)(1) ("The trustee may avoid any transfer . . . incurred by the debtor[ ] that was made or incurred on or within 2 years before the date of filing of the petition."). An actual fraud claim "requires the trustee to

12

show the transfer was made 'with actual intent to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted.'" *Ritchie Capital Mgmt.*, 779 F.3d at 861 (quoting 11 U.S.C. § 548(a)(1)(A)); *see also* Neb. Rev. Stat. § 36-706 ("A transfer . . . is fraudulent . . . if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor.").

In an action seeking to set aside a fraudulent transfer, the burden of proof is on a creditor (the trustee in a bankruptcy case) to prove, by clear and convincing evidence, that fraud existed in a questioned transaction. *Eli's, Inc. v. Lemen*, 591 N.W.2d 543, 555 (Neb. 1999). Clear and convincing evidence is "that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved." *Id.* at 555–56 (quoting *Dillon Tire, Inc. v. Fifer*, 589 N.W.2d 137, 142 (Neb. 1999)). "'Because proof of actual intent to hinder, delay or defraud creditors may rarely be established by direct evidence, courts infer fraudulent intent from the circumstances surrounding the transfer.'" *Ritchie Capital Mgmt.*, 779 F.3d at 861 (quoting *In re Sherman*, 67 F.3d 1348, 1353 (8th Cir. 1995)).

The NUFTA lists 11 "badges of fraud" that may be considered when determining actual intent under Neb. Rev. Stat. § 36-705(a). Neb. Rev. Stat. § 36-705(b). "Once a trustee establishes a confluence of several badges of fraud, the trustee is entitled to a presumption of fraudulent intent. In such cases, 'the burden shifts to the transferee to prove some legitimate supervening purpose for the transfers at issue,'" namely that the transferee accepted the transfer in good faith and for value. *Ritchie Capital Mgmt.*, 779 F.3d at 861-62 (quoting *Kelly v. Armstrong*, 141 F.3d 799, 802 (8th Cir. 1998) (internal citations omitted); *see* 11 U.S.C. § 548(c). In the Eighth Circuit, "the inferential 'badges

of fraud' approach" is used "to determine whether a debtor acted with 'intent to hinder, delay, or defraud [ ]' a creditor regardless of whether the intent language came from a state fraudulent transfer statute or applicable bankruptcy law.'" *Ritchie Capital Mgmt.*, 779 F.3d at 861 (quoting *In re Addison*, 540 F.3d 805, 811–12 (8th Cir. 2008)).

With respect to Ponzi schemes, several courts have decided that "transfers made in furtherance of the scheme are presumed to have been made with the intent to defraud for purposes of recovering the payments under [11 U.S.C.] § 548(a)." *Perkins v. Haines*, 661 F.3d 623, 626 (11th Cir. 2011); *see also In re DBSI, Inc.*, 476 B.R. 413, 422 (Bankr. D. Del. 2012) (" '[A]ll payments made by a debtor in furtherance of a Ponzi scheme are made with actual fraudulent intent.'") (quoting *In re World Vision Entm't, Inc.*, 275 B.R. 641, 658 (Bankr. M.D. Fla. 2002)); *Wagner v. Pruett (In re Vaughan Co., Realtors)*, 477 B.R. 206, 218 (Bankr. D.N.M. 2012) (collecting cases). By applying Ponzi scheme presumption, a court may bypass the badges of fraud analysis and infer actual fraudulent intent if it (1) finds the existence of a Ponzi scheme, and (2) determines the transfer was made in furtherance of that scheme. *Ritchie Capital Mgmt.,* 779 F.3d at 862; *Wagner*, 477 B.R. at 218 (finding the existence of the scheme satisfies the requirement of "actual intent" in the fraudulent transfer context); *In re Manhattan Inv. Fund Ltd.*, 359 B.R. 510, 517–18 (Bankr. S.D.N.Y. 2007), rev'd in part, 397 B .R. 1 (S.D.N.Y. 2007) (explaining that actual intent is satisfied because "transfers made in the course of a Ponzi scheme could have been made for no other purpose other than to hinder, delay or defraud creditors)." The Eighth Circuit Court of Appeals, however, has recently stated that it "draw[s] no conclusions as to the validity or future applicability of

the Ponzi scheme presumption in the Eighth Circuit." [11]  *Ritchie Capital*, 779 F.3d at 862 (affirming bankruptcy court's finding of actual intent to defraud under the badges of fraud approach).

Res judicata incorporates the related concepts of issue preclusion and claim preclusion. *Sandy Lake Band of Miss. Chippewa v. United States*, 714 F.3d 1098, 1102 (8th Cir. 2013); *Magee v. Hamline Univ.*, 775 F.3d 1057, 1059 (8th Cir. 2015). The doctrine of claim preclusion, also called res judicata, bars relitigation of a claim if: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases. *In re T.G. Morgan, Inc.*, 394 B.R. 478, 484 (B.A.P. 8th Cir. 2008), *aff'd*, 343 F. App'x 171 (8th Cir. 2009); *Magee*, 775 F.3d at 1059 ("To establish that a claim is barred by claim preclusion, a party must show: '(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action.'").

Whether a cause of action is the same for res judicata purposes depends on the facts presented, not the legal violations alleged. *In re T.G. Morgan,* 394 B.R. at 484. With respect to the "same claims or causes of action" element of claim preclusion, whether a second lawsuit is precluded turns on whether its claims arise out of the same

---

[11] Other federal circuit courts have adopted or applied the Ponzi scheme presumption. See *Wing v. Dockstader*, 482 Fed. App'x 361, 363 (10th Cir. 2012) (unpublished); *Perkins v. Haines*, 661 F.3d 623, 626–27 (11th Cir. 2011); *Donell v. Kowell*, 533 F.3d 762, 770–71 (9th Cir. 2008); *Warfield v. Byron*, 436 F.3d 551, 558–59 (5th Cir. 2006); *In re Mark Benskin & Co.*, 59 F.3d 170, 1995 WL 381741, at *5 (6th Cir. 1995) (unpublished table decision) (per curiam).

nucleus of operative facts as the prior claim. *Magee*, 775 F.3d at 1059. In addition, res judicata applies to any grounds that actually were or could have been raised in the prior action. *In re T.G. Morgan,* 394 B.R. at 484; *see Magee*, 775 F.3d at 1059 ("Under claim preclusion, 'a final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action'") (quotation omitted).

"Collateral estoppel, also known as 'issue preclusion,' provides that when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in another lawsuit." *In re T.G. Morgan*, 394 B.R. at 484 (quoting *Anderberg–Lund Printing Co.*, 109 F.3d 1343, 1346 (8th Cir. 1997)); *see also Chavez v. Weber*, 497 F.3d 796, 803 (8th Cir. 2007). The party asserting preclusion bears the burden of proving each of the elements. *Johnson v. Miera (In re Miera)*, 926 F.2d 741, 743 (8th Cir. 1991).

IV. DISCUSSION

The court will treat the Bankruptcy Court's Orders at issue as proposed findings of fact and conclusions of law on the relevant issues. The court has conducted a de novo review with respect to those motions and finds the bankruptcy court's findings and recommendations should be adopted in all respects. The court agrees with the Bankruptcy Court's conclusion that the judgment entered by the United States District Court in Illinois was not a final judgment. The record shows that the earlier order showed on its face that it was not a final order because it did not resolve all of the issues between the parties. The subsequent order purporting to find that the earlier

order was, in fact, a final order was filed after the automatic stay was in effect and is void ab initio.

The court further finds that the trustee has proved the prerequisites for application of the Ponzi presumption—the evidence establishes that there was a Ponzi scheme in existence and the debtors transferred property to others in furtherance of that scheme. The fact remains that the presumption, even if allowed, is a rebuttable presumption and Blumenthal will have an opportunity to rebut it at trial.

With respect to the preclusive effect of Michael Anselmo's plea agreement and conviction in the criminal case, the court finds the evidence adduced at Anselmo's plea colloquy and sentencing hearing support the finding that a Ponzi scheme existed and that certain transfers were made in furtherance of the scheme. The trustee, however, asks the court to treat the criminal conviction as conclusive proof of the debtors' fraudulent intent. The court agrees with the Bankruptcy Court's finding in its clarification of its order on summary judgment. In this circuit, a Ponzi presumption, if applicable, is rebuttable, and is not conclusive of fraudulent intent. Defendant Blumenthal will be allowed to attempt to rebut the presumption at trial. The court also agrees with the Bankruptcy Court's conclusion that there remains a genuine factual dispute on these issues.

The court will next address the preclusive effect of the Bankruptcy Court's findings in the *Cronk* adversary proceeding. Although similar issues were litigated in the *Cronk* adversary proceeding, the court finds that the plaintiff has not sustained his burden of showing that issue or claim preclusion should be afforded to the findings. Although Michael Blumenthal was nominally a party to the proceedings, having filed the

17

action against the Cronks in the first instance, M&M was joined as a necessary party under Fed. R. Civ. P. 12(b)(7) and the matter was referred to Bankruptcy Court. Once the action was transferred to bankruptcy court, the Trustee was the real party in interest. *See Cronk* Proceeding, 11-AP-08096, Filing Nos. 8 and 10. The claim tried in the adversary proceeding was the Trustee's claim on behalf of M&M. The present action is a similar claim by the Trustee against Blumenthal. In the *Cronk* case, insolvency and actual intent to defraud were deemed established by the nature of the transaction (the Ponzi scheme), leaving for resolution only the issues of whether the Cronks had provided reasonably equivalent value for the transfers and whether they acted in good faith. There are genuine issues of material fact on those same issues as they relate to Blumenthal in the present action. Accordingly,

IT IS HEREBY ORDERED:

1. The motion of Richard D. Myers, the bankruptcy trustee of M&M Marketing, L.L.C. and Premier Fighter, L.L.C, "to Determine Default Judgment Was Non-Final Order, to Clarify Ruling on Trustee's Renewed Motion for Partial Summary Judgment, and Determine Collateral Estoppel Effect of Ruling in the Cronk Case; Request for Judicial Notice" (Filing No. 30) is granted in part and denied in part as set forth in this order.

2. The parties' joint motion to review certain orders of the United States Bankruptcy Court (Filing No. 29) is granted.

3. The orders of the United States Bankruptcy Court, construed as Findings and Recommendations, are adopted and affirmed in all respects.

4. Counsel for the plaintiff shall contact the chambers of Magistrate Judge Thomas Thalken within fourteen (14) days of the date of this order to schedule a telephone conference.

DATED this 23rd day of June, 2015.

BY THE COURT:


　　s/ Joseph F. Bataillon
Joseph F. Bataillon
Senior United States District Judge